Hear ye, hear ye, hear ye. The United States Code of Appeals for the Fifth Circuit is now open according to law. God save the United States, Ms. Honorable Court. Well, good morning, everyone, and welcome to at least the virtual version of the U.S. Code of Appeals for the Fifth Circuit. We have three cases on our docket today. You can anticipate that we'll likely take a short break after the second of the three cases. All the normal rules apply, even though we're in this strange context, and want to thank all the Council for enduring the technological aspects of these challenging times. Like I said, all the normal rules apply. I'll just remind you all that rebuttal time, if you've reserved it, is intended for rebuttal only. We do not anticipate that you will bring up any new arguments during your rebuttal time. And with that, we will call the first case for the morning, 20-10263, Lindsley v. TRT Holdings. Mr. Apologies if I butcher your name. Is it Elwanger? It is, Your Honor. Good morning. Good morning. Members of the Court, J. Elwanger on behalf of Plaintiff Appellant Ms. Lindsley. The District Court erred by resolving critical issues of fact in favor of respondent on Appellant's claims of pay discrimination, failure to promote, and retaliation in violation of the Equal Pay Act, Title VII of the Civil Rights Act, the Texas Labor Code, and the Family Medical Leave Act. As a threshold matter, Appellant inadvertently argued that its motion to compel was still pending at the time the motion for summary judgment was granted. That was briefed in error, and Appellant withdraws that argument and apologizes to the Court for that mistake. But that does not change the fundamental issue that the District Court may not resolve issues of material fact in favor of granting summary judgment. Were there any pending discovery issues at the time summary judgment was entered, or had discovery been completed? I want to make understand what you're saying today. Discovery had not been completed, Your Honor, but to be fair, Plaintiffs had not filed a Rule 56-F motion informing the Court that depositions were still outstanding because we did not have the transcripts available from three depositions that were taken immediately prior to the grant of summary judgment. Frankly, because of the intervening Thanksgiving holiday, the transcripts were not yet available. Additionally, there was the most key deposition of David Morgan that was agreed to by the parties to be taken outside of the discovery period to accommodate Mr. Morgan's schedule because he was a non-party who was no longer employed by Omni Hotels. So no discovery motions were pending before the District Court? There were no discovery motions from Plaintiffs that were pending. There was a discovery motion by defendant that was pending and for which the defendant had filed some motions a week or two prior to the summary judgment being granted. But from Plaintiffs' perspective, what I want to make clear on the record is that our motions to compel had in fact been resolved by the Magistrate, and we are withdrawing that argument. Understood and appreciated. So here's my question then. Is your argument then that summary judgment was premature due to discovery issues or that summary judgment was just simply incorrect, even though all the information was available to the Plaintiffs and to a Plaintiff and to the Court? From Plaintiffs' perspective, summary judgment was improperly granted in that there was a trove of information that could have been supplemented had we had a status conference or something to alert the new judge that these items were pending. But again, I absolutely do not want to mislead the Court. Plaintiff did not file a 56th motion to apprise the Court of those pending depositions. So what was the information that you were not able to give to the District Court that you wish you could have? Well, some of those depositions that were taken but not able to be transcribed prior to the granting of the summary judgment included the Human Resources person who provided key testimony that the Court relied on as to whether or not, for example, the FMLA retaliation matter should stand. Additionally, the Chief Chef of the hotel location in question also gave his testimony as to what he witnessed during Plaintiff's time there. But perhaps the most key deposition was the one that wasn't taken, and that was of David Morgan, who was the corporate senior-level officer who was directly above the Plaintiff and who, throughout our case and throughout our briefing, is focused on as the person that retaliated against her, that derailed her promotion claim, and that derailed her claims for equal pay. That deposition was scheduled for the first week of September. But I would like to focus my argument today on the... Sorry, did the District Court know that? Again, the District Court was not apprised of that because we did not have the transcripts to cite as to evidence to the Court why those depositions were material. They were taken, but they had not been transcribed. I'm sorry, let me clarify. I think you had said that there was a deposition that would have been, in your theory, helpful on the pay discrimination theory. That deposition had not yet been taken, let alone transcribed, as of the entry of the summary judgment? No, Your Honor, that's incorrect. There had been depositions that were taken prior, the week prior to the summary judgment being granted, one of which, perhaps two of which, would have directly impacted the pay claim. The deposition that was not taken would have impacted, frankly, all of the claims because Mr. Morgan was the key witness in the case and we had trouble securing his deposition because he was a non-party. But what I'd like to focus on today, Your Honor, is what was before the Court. Because time and time and time again, the Court issued its ruling based upon resolving material issues of fact as to each of plaintiff's claims. And first, I'd like to turn to the fact that the District Court erred in granting summary judgment on plaintiff's pay discrimination claim. The plaintiff appellate brought pay discrimination claims under both the Equal Pay Act and also Title VII. Under the Equal Pay Act, we needed to prove that the position required skill, effort, and responsibility under similar working conditions and that the plaintiff was paid less than her male comparators. Under Title VII, we had to show that member of a protected class and was paid less for work requiring substantially the same responsibilities. And as to the Equal Pay Act claim, the District Court ignored evidence of pay disparities across the Omni Hotel Network, focusing on the single establishment rule under the Act. But that single establishment rule has exceptions, such as when pay decisions are made at the centralized or corporate level. And those exceptions were weighed and then ignored by the Corporate Human Resources Officer, Joy Rothschild, who testified that at plaintiff's level, policymaking was made at the corporate level and that that was part of the decision-making process. She further testified that someone at the corporate office would have had to weigh in on that decision regarding Ms. Lindsley. And the new Vice President of Food and Beverage for Omni Hotels, Devin Burns, testified that he personally was involved at the corporate level in the hiring and promotion of food and beverage employees at various locations throughout the Omni enterprise, even going so far as to interview candidates. These are material fact issues. As to Title VII, the District Court failed to separately analyze plaintiff's claims under Title VII, grouping it in with the Equal Pay Act claim, and that alone is a reversible error. But looking at what the facts were before the court and how the District Court did weigh Title VII, they wrongfully granted summary judgment there by excluding two comparators who did the exact same job in the exact same location. Ms. Lindsley was preceded in her role by a Mr. Cornelius, who was preceded by Mr. Walker, who was preceded by Mr. Pollard. And the District Court wrote that Ms. Lindsley provides no evidence that her job as Food and Beverage Director was in any way similar to Pollard and Walker's job, aside from the fact that they all shared the same job title. What the District Court did not note is that not only was it the same job title, but it was at the same hotel chain, at the same location, in the same city. There could be no greater comparator evidence than that, but the court ignored that. And those are material fact issues. The plaintiff has proven a prima facie case of pay discrimination, and that grant of summary judgment must be reversed. But the District Court continued and also erred in granting summary judgment on plaintiff's failure to promote claim. The District Court wrongly found the plaintiff failed... Let's stay with the pay discrimination for a moment. Do I understand the evidence is that in addition to Pollard and Walker, as you mentioned, the evidence is that your client was paid less than all of her male predecessors in the role of Food and Beverage Director? Substantially less, Your Honor, yes. Anywhere from 13% to 19% less when adjusted for time as to when each of those men were hired. Okay, and presumably, so that's your prima facie case. Presumably, the defense has the opportunity to justify those disparities as somehow justified based on something other than, obviously, discrimination. Is your view that they have not submitted such evidence or that that's an open discovery issue? What's the status of that given these discovery... So as to the immediately preceding candidate, there was evidence submitted in an affirmative defense... You're talking about Cornelius? I'm sorry? You said preceding candidate. You're talking about Cornelius? I am talking about Cornelius, yes. There, the court accepted the prima facie case submitted by plaintiff, but then turned to the affirmative defense levied by the defendant. And there, the court weighed the fact that the defendant put forth that this candidate had over a decade of experience with Marriott and ran his own business, but completely disregarded the fact that Ms. Linsley had over a decade of experience in the Omni Food and Beverage system itself, whereas the other candidate had no experience in food and beverage whatsoever. The district court improperly looked at that material fact issue, weighed it, and disregarded the plaintiff's evidence improperly. If I may turn to the next matter... I'm sorry, I'm still not clear. I understand your response on Cornelius, but at least the district court had some information there to play with. What is the information available that the defense might argue justifies the disparities as to Pollard, Walker, and the unnamed predecessors? In its briefing, defendant said that Pollard and Walker may have had different duties, but did not delineate how those duties were different. And so plaintiff relied on the fact that, again, it was the same job title in the same location. Are you waiting for more discovery on that front, or are you just saying that the defense has not provided sufficient summary judgment evidence? Plaintiff has provided sufficient summary judgment evidence to show that these men were paid much more doing the same job title in the same location, and defendant did not provide contrary evidence that they'd had different job responsibilities or different job duties. Okay, so your view there is it's not that you need more discovery, it's just they're not entitled to summary judgment. Correct. Because of the materiality of the fact issues that were weighed by the court. Turning if I may... You said that there would be three comparators? Is that where your contention is? Well, we actually proffered evidence across the Omni system, Your Honor. However, the district court disregarded that under the single establishment theory that only comparators at Omni's Corpus Christi location could be weighed here, and they ignored the fact that we provided evidence across the system nationally. But even looking at the Omni location in Corpus Christi, the court disregarded both Mr. Pollard and Mr. Walker's salaries as the two prior predecessors to Mr. Cornelius. And that was error, and it should be reversed. But that's not the only error that was committed by the district court. They also erred in plaintiff's failure to promote claim by wrongfully deciding that the plaintiff had abandoned her opportunity to seek a promotion. But during the interview with the general manager of that location in Houston where she was trying to be promoted, she was told that she was not quality for the property, that she would not be hired, or that there were two other applicants that the GM was going to look at as opposed to her. It was only after learning that, that as a formality, she submitted her withdrawal, but only after she was told she would not be getting the job, and testified under oath that she did not withdraw her name prior to that decision being made. And to add veracity to that opinion... Mr. Elwanger, is it disputed that she actually did receive a job offer? I mean, the promotion? It is not disputed that she, it is not disputed that she did not receive the offer, your honor, if that's clear. Well, no, maybe my question isn't clear. Did she get an offer? She did not get an offer to the Houston location. Did she get any offer? No, your honor, not to the, not to the promotion that was sought that is at issue in this case, which was to be the Food and Beverage Director of the Omni Houston location. She did not receive an offer for that position. You're saying she was offered a different promotion? No, she was, she, Ms. Lindsley was promoted many times over her career at Omni, rising actually from a server and a bartender all the way up to the executive level. But the, the promotion that she sought here to be the Director of Food and That is the promotion that we are, that is at issue before the court in this, this appeal. But wasn't she ultimately made, that offer was made to her? No, that, that offer was not made to her. Well, that's not what the briefs say. Okay. The, the, the key issue was whether or not, what the court relied upon is whether or not that she withdrew her name from consideration. The plaintiff says that she does not. The defendant said that she did. And based upon that, the court claimed there was no material fact issues. In the time remaining that I have, I'd like to focus on the claim of retaliation, and mainly to draw the court's attention to page 21 of the district court opinion, which lists a number of retaliatory acts under the EEOC Title VII claim. But what it does not mention is that all of those acts occurred after her charge of discrimination was ripped open, put on her desk, left for her to see. And every single retaliatory act that occurred after that point was clearly in violation of protected activity that the plaintiff had undertaken when she filed her EEOC charge. It is a material issue of fact to disregard that. The court did not mention that in its opinion. And as sorts, as such, that claim must also be reversed. Thank you. You've saved time for about a little. Mr. Hobbit? Hoblet? Hoblet. I'm sorry. I'm missing an L here. Hoblet. Good morning. May it please the court. Clay Hoblet for Omni Hotels and TRT Holdings. Let me first address the appellate's argument that somehow this case was not ripe for discovery. I'd like to point out to the court that Omni filed its motion for summary judgment on the deadline for filing such motions, December 17, 2018, which was the deadline in the current case management order. The plaintiff's brief also suggests that the discovery deadline wasn't until November of 19. That's not true. At the time we filed the summary judgments on the deadline, the discovery deadline was a couple of, I think, three or four months later. It was later extended by agreement of the parties and approval of the court. But at no time during, and by the way, the motions for summary judgment were filed 14 months after the case had been filed by the appellants. Another year went by. There was efforts to take additional depositions. They ultimately got taken, but in no time as the appellant has conceded, did they ever attempt to file any sort of motion under Rule 56 with the trial court to let them know that they thought there was discovery still to be taken that would impact the summary judgments. Moreover, when there were three additional depositions taken, they made no effort to advise the court that they thought that when he granted summary judgment, they directed us to file a second motion for summary judgment for T.R.T. Holdings, the other defendant in the case, on the merits of the case. And we filed that on December 17, 2019. And in response, the plaintiffs made no effort to attach any of this summary judgment evidence from these depositions, any evidence from those depositions in response to that motion either. And we don't believe it would have made a difference anyway. Of course, those depositions are not in the record. I will also point out that we have a different view of the record. If you'll see from the appellant's brief, they repeatedly cite to evidence attached to the motion for class certification. And they reference the Hawkins affidavit and portions of their motion for class certification, but not in their response to the motions for summary judgment. And it's our view that that is not part of the summary judgment record. And we wanted to make a note of that. Let me turn to this issue of David Morgan. They spend a lot of time talking about alleged past behavior of Mr. Morgan. But with regard to the promotion claim, which is in their briefing where they attempt to draw a nexus between Mr. Morgan and her failure to take the promotion in Houston, our position is that his actions are alleged behavior is irrelevant because it is undisputed that she withdrew her name from consideration. Did she later get the promotion or get offered the promotion? Yes. Here's what happened. Here's what the record shows. On August 5th, she had her interview. And by all accounts, it went well. There's documentary evidence in the summary judgment record from Kim. My question is, was she offered the Houston director position? Yes. Here's what happened. On August 10th, after she had withdrawn her name, Barry Sondran drove to Corpus Christi, met with her in person, encouraged her to put her name back in the hat for the promotion and assured her that the promotion was hers. And she refused to do it. She acknowledged in her deposition, this is in the summary judgment record. She acknowledged that that offer was made and she acknowledged that she refused it. That's uncontroverted. She said she refused it because she didn't like the circumstances under which it was being offered. But, you know, here's the deal on that. It's either it's not like it wasn't necessarily the most formalized offer, but she was, according to you, left under no uncertain terms that she would be getting the offer as long as she pursued it and she just refused to do it? Yes, your honor. It's very clear from the record. She just absolutely refused to do it because she didn't like the circumstances. But if you think about it, it's either one of two things. Either one, her perceptions of what was said in the original meeting with the general manager, Barry Sondran, on August 5th were wrong. The comments that were attributed to Morgan was that she was not qualified. They weren't. They were gender neutral. But either her perceptions were wrong and she would have withdrawn her application if she wanted the job. Or the only other alternative was is that Omni heard her in her complaint about how that interview went down and they gave a robust response and Barry Sondran, the GM who makes the ultimate decision, drove down to Corpus Christi and met with her personally and she refused to reconsider. So she clearly, we think the trial court judge Starr got it right that she rejected Omni and because she would do her application, she had two opportunities to do it, that she didn't meet her prima facie case. So you're saying that her own testimony, Mr. Hobbit, you're saying her own testimony establishes that she did get an offer and that she did withdraw, which is contrary to what opposing counsel said this morning. I'm just confused as to how these two versions are so contradictory. Judge Clement, let me be very clear. My recollection of the record is that the uncontroverted testimony from Barry Sondran is that he drove down and met with her and made it very clear to her that if she would resubmit her application, she would get the job. So that's what I'm trying to say. I think it's very strong and compelling. Let me address the pay claims. First of all, the claim under the Equal Pay Act that somehow the court should consider multiple locations of the Omni hotel chain, which at the time that these summary throughout the United States and North America. And the summary judgment record is they're divided into three groups of hotels, core properties, resort properties, which have golf courses, ski resorts, et cetera, and then convention properties. And there's substantial summary judgment evidence in the record that they're all very different in terms of food and beverage of the literal language of the Equal Pay Act, which says that only in unusual circumstances will you consider more than one geographic location to be a part of the same establishment. Clearly, Judge Starr got this right and then therefore appropriately disregarded the list of unnamed food and beverage directors that the appellant offered as evidence of pay disparity or as proper pay comparators from different properties. We know they're different for the very fact that the appellant considered the Houston job to be a promotion. And that's a simple example. And the record is very clear from the testimony of Joy Rothschild, the Chief Human Resources Officer for Omni and others about the significant differences. They clearly don't meet the burden of and there's no fact question that multiple properties should be considered a single establishment. Let me... If we limit ourselves to corpus... Sorry? Let's say we limit ourselves to corpus just for purposes of conversation. Is it the case that she was paid less than all of her male predecessors? She was paid as an initial salary less? Right. Apples to apples, just starting salaries, which she offered a smaller starting salary than all of her male predecessors. I'd have to check with Pollard and Walker, but I believe that's correct, Your Honor. So what is the... Is there a summary judgment evidence to explain why... I know there is on Cornelius, but what about Pollard and Walker? On Pollard and Walker, they offered nothing more than that they... I mean, under the EPA and under Title VII, the language of the statute and the regulations and the case law says that she has to show that her circumstances were nearly identical and that job titles and classifications are not enough. And I take exception or disagree with counsel's position that just because they're at the same location that somehow is evidence of the same responsibilities. I mean, if you think about it in these equal pay and Title VII cases, there are many cases where we're only dealing with an enterprise that only has one location. And let's take... Let's say you have a... Your position then is you don't need to present evidence to justify the disparities because it was plaintiff's burden to show that they were the same job? Argument's twofold. They did not... Judge Starr got it right. They did not make their prima facie case by showing that they had nearly identical circumstances in terms of skill, training, education, experience and responsibility. So he was right. But if you want to assume for the sake of argument that they met a prima facie case on Pollard and Walker, then the evidence is abundantly clear as to why they would have paid differently. Those two individuals were paid different starting salaries. And in the summary judgment record, the evidence from Joy Rothschild, again, the Chief Human Resources Director, and I'll refer the court to the record at 4611 and 4728, which is both her deposition or affidavit, extensive analysis of why you will have pay differences among people with the same title and at the same property. And it depends on, of course, the geographic location. They're at the same geographic location, but it depends on, again, their experience, their responsibilities, their training, their education. And so I think, one, the trial court got it right that... Is the evidence from Rothschild specific as to Pollard and Walker? I don't know that it mentions them by name. I'd have to defer to the record, though. Okay. And so they weren't her immediate successors. Cornelius was her immediate successor, and they didn't... We conceded... They didn't prove that he was a proper pay comparator. We conceded it. And, of course, we articulated the fact that he'd had 12 years of experience with Marriott. He'd had his own business for 14 years. He had significant... And, in fact, when he was hired, he was hired as director of catering for the Houston Hotel. So we think we more than articulated a legitimate non-discriminatory reason for Mr. Cornelius. His experience was more valuable than Linsley's 10 years of experience at the same hotel? Why is that? It is our view that it is, and Omni articulated that his vast experience as being self-employed and working for Marriott, one of the other leading hospitality companies in the world, mattered. And as Judge Starr noted, there's law that the court is not going to substitute its business judgment for that of the employer. They articulated a legitimate non-discriminatory reason based on business factors, then the court will accept that. And we cite the TXI case and then also the Pouncey Fifth Circuit case from 1982 to support that position of the employees. With regard to the retaliation claims, we believe, again, that Judge Starr got that right. And the plaintiff has articulated a list of alleged adverse employment actions that they allege are connected to her filing of an EEOC or FMLA claim. But if you look at the evidence, as Judge Starr did, clearly the overwhelming summary judgment record, documentary evidence, and testimony shows that much of her perceptions and feelings that it was retaliation are unjustified and unsupported by the record. And let me give the court a couple of examples. One of their big examples of retaliation is that her evaluation in 2016 was revised downward from a 5 to a 3. Well, the uncontroverted record is that the reason she had a 5 is because at the time the general manager, Steve Keenan, allowed his executive committee members to fill out their own evaluations. And she gave herself a 5. And corporate, which does have some oversight, became aware of that. They sent down a directive saying, no, in order to have objective and sound evaluations, we have to have real evaluations. So, Mr. Keenan, you need to redo them. And the for all of the executive committee members at the Omni Corpus Christi and also for many of the managers. And she was downgraded to a satisfactory evaluation. And we cite case law in our brief that, for example, the Schneider case, satisfactory but diminished evaluations do not constitute adverse employment actions giving rise to actionable retaliation claims. Let me give you another example. They make a big deal that Susan Gilbert, the human resources director at the Omni Corpus, told her that she could not take FMLA leave because she was a critical employee and she'd lose her benefits and may lose her job. And Ms. Lindsley's perception of that was that was in retaliation for filing her EEOC claim. The clear record is that that was an error by Ms. Gilbert with no showing of any animus. She was mistaken about the terms of FMLA. She corrected the mistake within 10 days. Ms. Lindsley was allowed to take her FMLA without delay. She took initially a two-month delay. And Ms. Gilbert was admonished and reprimanded by Omni for not understanding the rules and regulations regarding who can and who cannot take FMLA leave. Another one they allege is computer problems. And she comes back from FMLA. She has computer problems. She complains to management. The uncontroverted testimony is that they directed her to the IT department to attempt to fix it. They never heard another complaint. She says she thinks it was because of that, filing her claims that this was somehow connected. That's her perception. There's absolutely no evidence of that. They then go in their brief and say that her successor confirmed that when he took the job, he had all the information that she had. I'd ask the court to look critically at that information because I think they cite Sean Campbell's deposition. His deposition is not in the record. And they're really just referring to hearsay testimony from Ms. Lindsley. So if you knock out some of these big claims and then you're left with the yelling from Steve Keenan, she recounts that. They state in their brief that he says, you've got to drop this thing. I'd ask the court to look very carefully at the site that they give to that because that is not in her testimony. That's not anywhere in the testimony that she said that he said, you've got to drop this thing. You know, the inference would be the EEOC claim. That's not in her summary judgment. It's not in the testimony. And by the way, in her deposition, she says, you know, I'm not exactly really sure what his words were. And so she was very general in what she recounts about that. So I think when you then look at the retaliation claims as a whole, knocking out these big ones that are clearly from the record not related to the retaliation, then she just has, unfortunately, you know, some uncomfortable employment situations that don't rise to the level of adverse employment actions. And we cite the case law from the Fifth Circuit about being treated rudely with general hatefulness by other supervisors and employees without aggravating factors is not retaliation. I cite on page 32 of our brief. Thank you. Thank you, counselor. We'll now hear rebuttal time. It looks like you've reserved five minutes. Yes, your honor. Turning first to clear up this discrepancy between the parties as to whether or not Ms. Lindsley was ultimately offered the position in Houston. The record evidence is clear that she was not. There is no email. There is no written job offer. There is nothing. Mr. Hobbit has just said. I'm sorry. You dispute what Mr. Hobbit just said, that there was a conversation. I don't dispute that there was a conversation. What I dispute is that in the same way that one would expect in a corporation like Omni to receive a written job offer from the original application, that didn't occur. What they were asking was that she apply a second time. And that's what she declines to do based upon the fact that she was told by the same man that drove to Corpus to tell her to apply again, that he was withdrawing her nomination and that he was seeking other candidates for the job because she wasn't. I'm asking you to respond to opposing counsel directly. I am responding. Opposing counsel has said that has acknowledged that there was no written formal offer, but that there was a conversation where your client was suggested that she reapply because she would, in fact, get the promotion if she reapplied. My question to you is, do you dispute that or do you agree with that? I do not dispute that that conversation occurred. What I do dispute and what I think is painfully obvious by this entire exchange is that there is an immense fact issue as to whether or not the job was extended, whether or not the job offer was withdrawn, whether or not the application was withdrawn. All of this is going to require a jury to weigh the testimony of Ms. Lindsley, Mr. Sonder, perhaps ultimately Mr. Morgan, as to how this occurred and whether or not that is credible evidence that she would have gotten the job. Because the fact is she did apply and she didn't get the job. Turning though to the retaliation point that counsel referred to at the close of his argument, there are important distinctions that the the district court ignored the fact that her actual EEOC charge was placed on her desk for her to find prior to these retaliatory acts occurring. Those in counsel also ignored that or as to the FMLA retaliation that that score change on her performance evaluation that was originally done prior to her taking FMLA leave, well that was only changed after she came back from FMLA leave. And again it is a material fact issue as to whether that change was directed by corporate because as counsel argues well this is just an overall change to how we do performance reviews or was it tied to the fact that it was the day after she came back from FMLA leave that her score was changed from a five to a three on her own performance review. These are employment decisions and ultimate actions that would qualify as retaliation under the FMLA and ultimately under Title VII. And as to whether or not these IT issues as they were described were retaliatory, again look to the record evidence that after she resigned and after she was constructively discharged that all of a sudden those documents were available to her successor. And in terms of whether or not this was an honest mistake by HR when they informed her that she could not take FMLA leave, the fact that it was corrected 10 days later, the fact that as opposing counsel stated in his argument she was admonished and reprimanded by Omni, the fact that all of this occurred surrounding plaintiff's FMLA leave are material fact issues that can't just be swept aside by the district court and that a jury should be able to consider whether or not these were acts of retaliation under the FMLA. That is clear. And finally once again turning back to the pay claims that were discussed at length, it is axiomatic that somebody who holds the single position of food and beverage director at a property, we're not talking about multiple servers or multiple bartenders, this was one solo position, plaintiff put forth that all three of her predecessors at that exact position at that exact same property were all paid between 13 and 19 percent more than she was paid to do the same job with the same title at the same position. And the court disregarded that and a jury must be allowed to consider that evidence when they are considering her equal pay claims. But the common theme that runs through this entire argument members of the court, and I appreciate the precision with which we're all looking at the record here, but in each of plaintiff's three main causes of action, failure to promote, failure to provide equal pay, and retaliation under the FMLA Title VII and Equal Pay Act, in all of these areas the record is replete with numerous instances of material facts that were disregarded by the court and swept over. A jury should consider these and the summary judgment should be reversed. Thank you, counselors. The case is submitted.